## Advance Instruments Inc. v. Castelli

C.P. of Allegheny County, no. GD 00-8073.

*Michael Jansen,* for plaintiff.
*James R. Walker,* for defendant.

FRIEDMAN, *J.,* May 10, 2001—In the instant non-jury trial, plaintiff sought to recover what it characterizes as excess draw paid to defendant and not covered

by the commissions actually earned by defendant prior to the termination of his employment.

Defendant, on the other hand, contends that the money he earned from plaintiff was a salary, not a draw, and seeks to recover unpaid wages and other damages under the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 et seq.

Prior to the start of the non-jury trial before the undersigned, plaintiff moved in limine to have a ruling by another judge of this court declared "the law of the case." The ruling supposedly was that a written contract was a "novation" of a prior oral agreement (rather than an inaccurate "memorialization" of it). The ruling was supposedly set forth in the order of the Honorable Eugene B. Strassburger III dated October 5, 2000, which dismissed Count I (replevin) of plaintiff's complaint and also dismissed two counts of defendant's counterclaim, Count II, breach of [an oral] contract [for a one-year period of employment] and Count III, unjust enrichment. Judge Strassburger let stand Count I of defendant's counterclaim, the "claim under Pennsylvania Wage Payment and Collection Act," apparently because of the factual dispute as to whether the regular biweekly payments to defendant by plaintiff constituted a draw or a salary. Also still pending is Count II of plaintiff's complaint, breach of contract.

The order of Judge Strassburger makes no mention of a conclusion that the written contract is a "novation," as plaintiff argued in its motion in limine. The only reference to the concept of a novation was in plaintiff's motion for partial summary judgment. However, a review of defendant's counterclaim, plaintiff's motion for

partial summary judgment, and Judge Strassburger's order reveals that Judge Strassburger dismissed Count II of the counterclaim most probably because of the presumption that employment is at will unless there is an express agreement, usually in writing, for a definite term. An oral agreement for a specific length of employment can rarely be proven and apparently defendant did not produce evidence in response to plaintiff's motion which, if believed, would make out an oral contract for one year of employment as he alleged in Count II of his counterclaim.

Similarly, Count III of defendant's counterclaim, for unjust enrichment, was probably dismissed based on the well-settled principle that a claim based on an *express* contract (whether oral or written) can only be made out by proving that contract and not by proving a claim in quantum meruit or unjust enrichment. See for example Standard Pennsylvania Practice §22.7.

In other words, there is nothing in Judge Strassburger's order to suggest that he regarded the written employment agreement as either binding or as the complete agreement between the parties or as a "novation." Plaintiff's motion in limine regarding deference to his order was therefore properly denied.

Turning now to the trial itself, the credible evidence shows the following:

The contract between the parties was initially an oral one, reached by defendant and Dwight Kelley, the son of Robert R. Kelley, the CEO of plaintiff. Dwight Kelley who hired defendant did not testify nor was any explanation given for his absence. Only Robert E. Kelley, who had nothing to do with defendant's hiring until af-

ter the fact, testified. He testified to a written document that he said defendant had to sign because plaintiff required all its salespeople to sign. Robert Kelley did not testify that he and plaintiff reached a different agreement from the oral one defendant and Dwight Kelley had reached earlier. Were the written contract unquestionably the full agreement of the parties, that would present no problem and Judge Strassburger would probably have granted plaintiff's motion for partial summary judgment as to the wage claim as well. However, the credible evidence showed that the oral agreement reached by defendant and Dwight Kelley was not the same as the document Robert Kelley forced defendant to sign.

Defendant *believed* he was hired to *develop* a sales territory for a particular manufacturer's products, which were new to plaintiff but not to defendant, in exchange for a salary of $70,000 per year plus *reimbursed* auto expenses of $675 per month. Plaintiff's only witness, Robert Kelley, *assumed* defendant was hired to be an ordinary salesman. The only person who would be able to testify as to whether defendant was hired to develop the territory or to be an ordinary salesman for developed territory, was Dwight Kelley. Furthermore, only Dwight Kelley knows whether his oral arrangement with defendant was for a salary or a draw against commissions. His failure to testify without any explanation of his non-appearance raises the inference that his truthful testimony would be unfavorable to plaintiff.

Defendant testified, credibly and without rebuttal, that salesmen are generally paid a draw against commission when a sales territory has been developed. He explained

that plaintiff had just obtained the account of the manufacturer at issue, Foxboro, and he, defendant, had been hired by plaintiff to handle those products in the West Virginia area because of his experience with the products. (Defendant also said he believed that Foxboro had arranged for his hiring by plaintiff after Foxboro's relationship with its previous sales representative, for whom defendant worked, had ended amicably. Robert Kelley was apparently unaware of such an arrangement but, again, he was not the person at plaintiff who was involved in the hiring of defendant.) Defendant testified that the territory was not a successful one for the manufacturer's representative for Foxboro who preceded plaintiff. Defendant also testified that plaintiff had little experience with the territory and little or no experience with Foxboro's products. This fact is undisputed, even by Robert Kelley. According to defendant, and again unrebutted, a salesman who is developing a territory initially gets paid a salary because there is no history to determine likely sales amounts and the consequent commission amounts and draws. Once the territory is "developed," its value is more accurately ascertainable.

The court finds that the written contract was presented by Robert E. Kelley to defendant several days after he was hired under an oral contract with Dwight Kelley. The court also finds that the written contract did not contain the full agreement of the parties. In particular the court finds that schedule A, "Compensation of employee," incorrectly designates the biweekly payments to defendant as a draw against commission, when plaintiff's agreement with defendant as negotiated by

Dwight Kelley called for a $70,000 salary plus auto expenses, at least until the territory was developed. Defendant is credible when he says that he believed, based on a lawyer's advice in a different context, that the contract pressed upon him by Robert Kelley was unenforceable and that he therefore felt that signing it (even though parts of it were inaccurate based on the oral agreement by which he was hired) was of no consequence. This adequately explains why he signed something that contained an incorrect designation for his salary. Whether or not his belief was correct about the law is insignificant.

Although he never testified to this, Robert Kelley appears to have believed that the West Virginia sales territory for Foxboro products was already "developed" when plaintiff became its sales representative. The credible evidence showed *no* support for this apparent belief.[1] Plaintiff presented no rebuttal, such as evidence from Foxboro that the territory had a history of sales that would warrant $70,000 in commissions, or evidence in either plaintiff's case in chief or in rebuttal that defendant did orally agree to a draw-against-commissions arrangement. Plaintiff has not met its burden on its own claim.

Plaintiff's claim for return of excess draw must therefore be denied. The corollary to this decision is that defendant's counterclaim under the Pennsylvania Wage Payment and Collection Law must be granted, as follows:

---

1. It should also be noted that the court assumes such a belief because the only alternative is that Robert Kelley was untruthful, a finding the court does not need to make.

(1) Unpaid salary for two weeks from March 19, 2000 through March 31, 2001. The gross amount of this salary is $2,693.

(2) Liquidated damages of the greater of $500 or 25 percent of the total amount of wages due. This amount is $500.

(3) Attorneys fees. This amount will be decided by petition and answer as stipulated to at the beginning of trial. See scheduling order filed herewith.

A verdict must be entered accordingly in favor of defendant on Count II of plaintiff's complaint and Count I of defendant's counterclaim. See verdict slips separately filed.

## ORDER

And now, to-wit, May 10, 2001, the question of the amount of attorneys fees to be awarded will be decided as follows:

(1) Defendant's petition with counsel's detailed affidavit of hourly rates and the itemization of time spent by each lawyer or paralegal is to be filed within 10 days of the date hereof.

(2) Plaintiff answer, with a counter affidavit, if any, is to be filed within 20 days of the date hereof.

(3) Once the court has reviewed the petition, answer and affidavits, it will notify the parties whether a hearing will be held and whether argument will be oral or by briefs.